IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SUN LIFE ASSURANCE
COMPANY OF CANADA,

    Plaintiff,

v.

CHRISTINE L. KIMBLE, et al.,

    Defendants.

No. CIV S-06-2041 EFB

ORDER

This action in interpleader was referred to the undersigned on February 26, 2007. Subsequently, all remaining parties that have appeared in the action consented to proceed before the undersigned. *See* 28 U.S.C. § 636(c).[1] The parties were before the court on defendant Tim Coop's motion for judgment on the pleadings. That motion was submitted pending the filing by Mr. Coop of a motion for entry of default judgment against defendant Kimble, who has not appeared in this action. Mr. Coop has since filed the application for entry of default judgment, which no party opposed, and both matters now stand submitted for decision. Having reviewed all submitted papers, and consistent with the discussion herein, the court grants defendant

---

[1] Defendant Christine L. Kimble, identified by plaintiff as a potential claimant to the funds at issue in this interpleader action, has failed to make an appearance. As discussed herein, defendant Tim Coop has moved for entry of default judgment against her.

1

Coop's motion for judgment on the pleadings and the motion for default judgment against defendant Kimble.

**I. BACKGROUND**

This action was filed on September 13, 2006, by plaintiff Sun Life Assurance Company of Canada ("Sun Life"). Sun Life issued Clayton Homes, Inc. a group term life insurance policy (the "Sun Life Policy"), which funds in part the benefit plan carried by Clayton Homes, Inc. *See* Complaint ("Compl."), at ¶¶ 7-8. That plan is governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, *et seq*. Clayton Homes acquired Karsten Homes in September 2005, and employees of Karsten Homes were added to the Sun Life Policy effective September 2, 2005. *Id.*, at ¶ 9. Roger Kimble was employed by Karsten Homes, and then by Clayton Homes, and was a participant in the Clayton Homes benefit plan, insured under the Sun Life Policy. Mr. Kimble designated Tim Coop as the beneficiary on the insurance enrollment form. *Id*., at ¶ 14. Mr. Kimble died on October 19, 2005, and by reason of his death, benefits became due and payable under the Sun Life Policy. *Id.*, at ¶ 10.

Sun Life filed the present interpleader action, naming as defendants three individuals with conflicting claims to the ERISA-governed life insurance policy proceeds. *Id.*, at ¶ 11. Defendant Tim Coop claims a right to the proceeds based on his designation as the beneficiary on the insurance enrollment form. *Id.*, at ¶¶ 14, 18. Defendant Debbie J. Durbin, the decedent's ex-wife, alleged rights to the proceeds by virtue of a child support lien purportedly entered in the State of Oklahoma against the decedent policyholder. *Id.*, at ¶¶ 4, 16. Defendant Christine L. Kimble claimed a right to the proceeds by virtue of her status as the spouse of the deceased. *Id.*, at ¶ 17. Sun Life asserts no beneficial interest in the proceeds, and has deposited $24,530.96, the entire insurance proceeds, plus interest, with the court. *Id.*, at ¶ 23.

**II. DEFAULT JUDGMENT**

On September 26, 2006, defendant Kimble signed a waiver of service of summons, acknowledging that a judgment could be entered against her if she did not timely respond to the

complaint in interpleader. The waiver was filed with the court on October 11, 2006. Ms. Kimble failed to answer or otherwise respond to the complaint. Accordingly, Sun Life moved for entry of default against her. The Clerk entered Ms. Kimble's default on December 19, 2006. On January 19, 2007, by stipulation and order, Sun Life was discharged from liability and dismissed with prejudice from the action.

The instant motion as to defendant Kimble is occasioned by the fact that, prior to its dismissal, Sun Life failed to move for entry of default judgment against Ms. Kimble pursuant to Fed. R. Civ. P. 55(b), even though the Clerk's entry referred the parties to that Rule, as well as to Local Rule 72-302(c)(19), and Fed. R. Civ. P. 54(b). Entry of default does not automatically result in granting of a default judgment. *Pepsico, Inc. v. Triunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999) (citing *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980)). The entry of default under Fed. R. Civ. P. 55(a) does not serve as a final adjudication of defendant Kimble's claims. Because Sun Life never moved pursuant to Fed. R. Civ. P. 55(b) for entry of default judgment against Ms. Kimble, defendant Tim Coop now does so to ensure that no outstanding claims remain after judgment is entered in this interpleader action.[2] Construing the waiver of service of summons as an appearance by Ms. Kimble, Mr. Coop provided Ms. Kimble with notice of the application for judgment against her. *See* Rule 55(b); Proof of Service to Motion for Judgment by Default.

It is within the sound discretion of the district court to grant or deny a default judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In making this determination, the court considers the following factors:

////

---

[2] Here, because the action will be dismissed pursuant to this court's order granting defendant Tim Coop's motion for judgment on the pleadings, entry of default judgment against defendant Kimble is appropriate at this time. *Northland Ins. Co. v Cailu Title Corp.*, 204 F.R.D. 327, 330 (W.D. Mich. 2000) (when default is entered against one defendant in multi-defendant case, preferred practice is for court to withhold granting default judgment until trial of action on merits against remaining defendants).

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning the material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

In this action, the relevant dispute concerns the defendants' competing claims to the interplead funds. As discussed below, Mr. Coop has established his right to those funds, and both he and Sun Life would be prejudiced if default judgment were not granted. Each would be denied the certainty and finality that judgment in an interpleader is intended to provide. *Aetna Life Ins. Co. v. Bayona*, 223 F.3d 1030, 1034 (9th Cir. 2000) ("Interpleader's primary purpose is not to compensate, but rather to protect stakeholders from multiple liability as well as from the expense of multiple litigation."). Without entry of default judgment against the defaulting defendant, neither plaintiff nor Mr. Coop can be satisfied that the competing stakeholders' claims are finally resolved.

The second and third factors also weigh in favor of entry of default judgment. As a general rule, once default is entered, the factual allegations of the complaint are taken as true, except for those allegations relating to the damages. *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (citations omitted). Here, the facts as plead by Sun Life reveal competing claims to the interplead funds. Ms. Kimble has failed to pursue her claim thereto by failing to answer the complaint or otherwise appear in this action, and as discussed below, Mr. Coop has established his superior right to those claims.

The fourth *Eitel* factor, the sum of money at stake, does not clearly weigh in either party's favor. Rather, both Sun Life and Mr. Coop wish to resolve the conflicting claims to the interplead funds and ensure that the funds are released to the proper party so that no outstanding claims thereto remain. With regard to the fifth factor, no genuine issue of material fact exists because the allegations in the complaint are taken as true, *TeleVideo Systems*, 826 F.2d at 917-

18, and Ms. Kimble has submitted nothing to contradict them or otherwise support her potential claims to the interplead funds.

The sixth factor also weighs in favor of granting default judgment since Ms. Kimble has failed to prosecute her purported claim to the interplead funds, even though she was served with, and acknowledged receipt of, the complaint and summons.  Her failure to respond to the complaint or otherwise appear cannot be deemed "excusable neglect."

Finally, only the seventh *Eitel* factor weighs against granting the motion for default judgment.  The strong policy underlying the Federal Rules of Civil Procedure favors decisions on the merits.  *Eitel*, 782 F.2d at 1472.  Nonetheless, where a defendant fails to answer the complaint, a decision on the merits is "impractical, if not impossible."  *Elektra Ent. Group, Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) (citations omitted).  Given Ms. Kimble's failure to appear or otherwise pursue her claim to the interplead funds, this factor does not preclude an entry of default judgment against her.  *Id.* at 393.  Furthermore, Mr. Coop has established his entitlement to the interplead funds.  Thus, on balance, the factors weigh in favor of granting the motion for entry of default judgment against Ms. Kimble.

## III.  JUDGMENT ON THE PLEADINGS

### A. Standard

Rule 12(c) of the Federal Rules of Civil Procedure provides, "[a]fter the pleadings are closed but within such time as not to delay the trial, *any party* may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c) (emphasis added).  "A judgment on the pleadings is properly granted when, taking all allegations in the pleading as true, the moving party is entitled to judgment as a matter of law."  *McGann v. Ernst & Young*, 102 F.3d 390, 392 (9th Cir. 1996) (citation omitted).

When ruling on a motion brought under either subsection, if a district court considers evidence outside the pleadings, it must normally convert the motion into a Rule 56 motion for summary judgment, and it must give the nonmoving party an opportunity to respond.  *United*

*States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003) (citations omitted). "A court may, however, consider certain materials -- documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice -- without converting the motion to dismiss into a motion for summary judgment." *Id.* (citing *Van Buskirk v. CNN*, 284 F.3d 977, 980 (9th Cir. 2002)). Here, the court considers only the complaint and its attachments. Accordingly, the motion is properly addressed as one for judgment on the pleadings pursuant to Rule 12(c).

### B. Analysis

Co-defendant Tim Coop asserts that he is entitled to judgment as a matter of law based on the pleadings filed in this action, including the answers to the complaint in interpleader filed by defendants Coop and Debbie J. Durbin.[3]

As set forth above, Sun Life alleged in the complaint that it issued a group term life insurance policy to Roger Kimble, who is now deceased (referred to herein as "decedent"). Compl., at ¶¶ 13, 15. Three defendants – Coop, Durbin and Kimble – each claimed an interest in the policy proceeds, and Sun Life filed this action to determine the appropriate payee. Compl., at ¶ 22. Defendant Coop is the named beneficiary under the insurance policy and asserts that he is therefore entitled to the policy proceeds as a matter of law. Compl., at ¶¶ 14, 18. Defendant Durbin opposes Coop's motion based on a purported court ordered child support lien entered in Oklahoma state court.[4]

////

---

[3] Mr. Coop is represented by counsel in this matter and co-defendant Durbin has appeared *in propria persona.*

[4] The court notes that Ms. Durbin also filed a motion for judgment on the pleadings, which merely restates her argument that her state court child support judgment against the decedent entitles her to the interplead insurance proceeds. Ms. Durbin's motion presented no other factual or legal arguments, nor was it properly noticed for hearing. Consistent with this order, the court grants Mr. Coop's motion for judgment on the pleadings. Ms. Durbin's motion is therefore denied.

6

The complaint establishes that the employee benefit plan provided by Clayton Homes is governed by ERISA. Compl., at ¶¶ 7, 8. The parties do not dispute this, although defendant Durbin has urged the court to give priority to the state-court child support judgment over defendant Coop's claim as the designated beneficiary, and award her the proceeds.

"ERISA[] commands that a plan shall specify the basis on which payments are made to and from the plan, § 1102(b)(4), and that the fiduciary shall administer the plan in accordance with the documents and instruments governing the plan, § 1104(a)(1)(D), making payments to a beneficiary who is designated by a participant, or by the terms of [the] plan. § 1002(8). . . . In other words, . . . [ERISA] governs the payment of benefits, a central matter of plan administration." *Egelhoff v. Egelhoff*, 532 U.S. 141, 147-48 (2001) (internal quotations and footnote omitted).

Here, one of the documents comprising the plan is the "Insurance Enrollment Form," on which the decedent designated Tim Coop as beneficiary to the life insurance policy. Compl., at ¶ 14; Exh. 2 thereto.

As a general rule, ERISA supercedes and preempts state law. 29 U.S.C. § 1144(a). More specifically, ERISA's preemption section – §1144(a) – provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. *Egelhoff*, 532 U.S. at 143 (quoting 29 U.S.C. § 1144(a)).

Here, defendant Durbin's claim to the proceeds rests entirely on the 1996 state-court judgment against the decedent. Attached to the complaint are exhibits provided to Sun Life by Ms. Durbin regarding her alleged state-law-based claim to the proceeds. Those exhibits include a Decree of Divorce, issued by an Oklahoma state court in 1983, dissolving the marriage between decedent and Ms. Durbin, and specifying the terms of decedent's child support obligations. *See* Exh. 3 to Compl. Ms. Durbin also provided Sun Life with a copy of a Statement of Judgment from an Oklahoma court showing judgment entered against the decedent in favor of Ms. Durbin in 1992. The "Journal Entry of the Judgment" explains that judgment

7

was made against the decedent due to his failure to abide by the divorce decree's child support payment provisions. *Id.* The Statement of Judgment shows Ms. Durbin recorded the judgment in Yuba County, California on September 23, 1996.[5] *Id.*

Congress amended ERISA with passage of the Retirement Equity Act of 1984, creating an exception to ERISA's general preemptive bar to state court orders affecting the distribution of plan benefits. *See Trs. of the Dirs. Guild of America-Producer Pension Benefits Plans v. Tise*, 234 F.3d 415, 419-20 (9th Cir. 2000); 29 U.S.C. § 1144(b)(7).

Section 1144(b)(7) excludes from ERISA preemption qualified domestic relations orders ("QDRO") within the meaning of 29 U.S.C. § 1056(d)(3)(B)(i). As defined in that section, a QDRO is a domestic relations order that "creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan." 29 U.S.C. § 1056(d)(3)(B)(i)(I).

In order for a domestic relations order to "qualify" as a QDRO,[6] the order must clearly specify four things: (1) "the name and the last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order; (2) the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined; (3) the number of payments or period to which such order applies; and, (4) each plan to which such order applies." 29 U.S.C. § 1056(d)(3)(C)(i)-(iv).

---

[5] The court notes that the complaint refers to a "child support lien purportedly entered in the State of Oklahoma on September 23, 2005." Compl., at ¶ 16. However, exhibit 3 to the complaint shows the Statement of Judgment recorded on September 23, 1996. *See* Exh. 3 to Compl. (emphasis added). At the hearing, Ms. Durbin confirmed that the exhibits attached to the complaint were the only documents evidencing her judgment against the deceased, and thereby confirmed the typographical error in paragraph 16 of the complaint.

[6] The term "domestic relations order" means any judgment, decree, or order which relates to the provision of child support, alimony payments, or marital property rights of a spouse, former spouse, child, or other dependent of a participant, and is made pursuant to a state domestic relations law. 29 U.S.C. § 1056(d)(3)(B)(ii).

Before launching into an analysis of whether Ms. Durbin's judgment against the decedent qualifies as a QDRO, the court notes that there are conflicting decisions among the Circuits regarding the applicability of the QDRO provisions to an employee welfare benefit plan, such as the one at issue here, as opposed to a pension plan governed by ERISA. The parties have not cited, nor has this court identified a Ninth Circuit opinion addressing this issue.

Section 1056, by its terms, relates to only to pension plans. *See* § 29 U.S.C. § 1056(d)(1). However, several courts that have addressed the issue have determined that § 1144(b)(7)'s exception to preemption for QDROs is not limited to pension plans, and applies to welfare benefits plans as well. *See Metropolitan Life Ins. Co. v. Marsh*, 119 F.3d 415, 421 (6th Cir. 1997) (section 1144(b)(7) excepts QDROs from ERISA preemption with respect to welfare plans as well as pension plans); *Carland v. Metropolitan Life Ins. Co.*, 935 F.2d 1114, 1119-20 (10th Cir. 1991) (the exception applies to all qualifying domestic relations orders whether they involve a pension or welfare benefit plan); *Metropolitan Life Ins. Co. v. Wheaton*, 42 F.3d 1080, 1084 (7th Cir. 1994) (same); *but see Brandon v. Travelers Ins. Co.*, 18 F.3d 1321, 1324 (5th Cir. 1994) (finding that § 1056(d)(1) applies only to pension plans and not welfare benefit plans, including employer-provided life insurance policies).

Even assuming the interpretation of § 1056 adopted by the Sixth, Seventh, and Tenth Circuits, plaintiff could not prevail on her claims. The documents presented to Sun Life do not qualify as a QDRO under that statute. In fact, those documents make no reference to the plan at issue, nor could they, since those orders were entered before decedent even enrolled in the plan in September 2005. Compl., at ¶ 9. Moreover, at the hearing on defendant Coop's motion, Ms. Durbin represented to the court that she had never obtained a QDRO with regard to the child support judgment against the decedent, and that the documents presented in Exhibit 3 to the complaint were the only items that supported her claim.

Those documents do not recognize Ms. Durbin's right to any life insurance proceeds under the plan. Ms. Durbin has presented no other theory under which she claims entitlement to

9

the proceeds. The plan governs distribution of the proceeds to Mr. Coop as the designated beneficiary, and Ms. Durbin cannot present evidence to satisfy the QDRO exception to ERISA's preemptive effect on of her state-law-based claim to the proceeds. Accordingly, Mr. Coop is entitled to judgment as a matter of law and his motion is therefore granted, and Ms. Durbin's motion is denied.

**IV.  CONCLUSION**

In accordance with the foregoing, IT IS ORDERED that:

1. Default judgment is entered against Christine L. Kimble pursuant to Fed. R. Civ. P. 55(b). Pursuant to that judgment, Christine L. Kimble shall have no claim or interest in the insurance proceeds that are the subject of this interpleader action;

2. Defendant Tim Coop's motion for judgment on the pleadings is granted;

3. Defendant Debbie J. Durbin's motion for judgment on the pleadings is denied; and

4. The Clerk is directed to close the case.

DATED: November 6, 2007.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE